# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

Nº 20-CV-5783 (EK) (RER)

———————————————

GAFFOS, INC.,

Plaintiff,

VERSUS

DESIGNER OPTICS CORP., JOSEPH LEFKOWITZ, AND JOHN DOES I–III,

Defendants.

———————————

**REPORT & RECOMMENDATION**

March 23, 2022

———————————

**TO THE HONORABLE ERIC R. KOMITEE**
**UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Gaffos, Inc. ("Gaffos") moves to voluntarily dismiss its trademark infringement action without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. (ECF No. 38 ("Pl's Mot."); ECF No. 38-1 ("Pl's Mem.")). Defendants, Designer Optics Corp. and Joseph Lefkowitz, oppose the motion, arguing that the dismissal should be with prejudice, and cross-move for attorneys' fees under (1) Rule 41(a)(2) of the Federal Rules of Civil Procedure, (2) the fee shifting provision of the Lanham Act, 15 U.S.C. § 1117(a), and (3) the Court's inherent authority to award fees when a party's conduct constitutes civil contempt. (ECF No. 39 ("Def's Cross Mot."); ECF No. 40 ("Def's Opp. Mem.")). Your Honor has referred the motions to me for a report and recommendation. (Order dated 02/03/2022). For the reasons set forth herein, I respectfully

1

recommend that Plaintiff's motion for voluntary dismissal without prejudice be granted, and that Defendant's cross-motion for attorneys' fees be denied.

## **BACKGROUND**

Gaffos is a New York corporation that sells fashion eyewear using the "GAFFOS" trademark through an online retail store. (ECF No. 1 ("Compl.") ¶¶ 4, 9–10). Gaffos alleges that Mr. Lefkowitz owns, and along with three unnamed John Doe defendants, directs and controls a competing online eyewear retailer, Designer Optics. (*Id*. ¶¶ 5–7, 12). According to the complaint, Gaffos learned in November 2020 that although the two companies are unrelated, Designer Optics was running a Google AdWords advertising campaign using the GAFFOS trademark "to pass off its retail store services as sponsored by or affiliated with Gaffos." (*Id*. ¶¶ 13, 15–18). According to Gaffos, Defendants' campaign would lead consumers searching for Gaffos eyewear on the internet to Designer Optics' website, and would accordingly mislead those consumers into believing that Designer Optics was an official and authorized Gaffos eyewear dealer. (*Id*. ¶¶ 14, 16).

Shortly after sending a cease-and-desist email to Mr. Lefkowitz and Designer Optics, Gaffos filed this action on November 30, 2020, seeking injunctive relief and damages based on trademark infringement claims under the Lanham Act, and on false advertising and deceptive trade practices claims under New York state law. (*Id*. ¶¶ 25, 27–46; *see also* ECF No. 43-2, Sealed Ex. 6 to LaVigne-Albert Decl.)).[1] Defendants answered on January 21, 2021, and the parties filed a case management statement establishing discovery deadlines the following week. (ECF Nos. 15, 17).

---

[1] Prior to the events at issue here, Plaintiff's counsel represented another eyewear retailer, Solstice Marketing Concepts LLC ("Solstice"), in a separate action against Defendants involving a nearly identical set of circumstances. (ECF No. 42-3 ("Solstice Compl.")). As here, Plaintiff's counsel discovered an allegedly infringing Google AdWords campaign, requested via email that they cease use of the Solstice trademark, filed an action after receiving no response to that request, and █████. (*See* ECF No. 43 ("Sealed LaVigne-Albert Decl.") ¶¶ 2–5, 7–10; ECF No. 43-1, Sealed Ex. 2 to Lavigne-Albert Decl.; ECF No. 43-2, Sealed Ex. 6 to LaVigne-Albert Decl.). Unlike here, the parties settled soon after the

After unsuccessful settlement discussions (*see* Minute Entry dated 02/04/2021; ECF No. 18), and shortly after this Court extended discovery deadlines at the request of both parties (ECF No. 20; Order dated 05/24/2021), Gaffos submitted a letter to Your Honor requesting a pre-motion conference on an anticipated motion for partial summary judgment with respect to its trademark infringement claims. (ECF No. 21). In the letter, Gaffos signaled its intent to pursue summary judgment regarding Mr. Lefkowitz's individual liability under the Lanham Act as a direct participant in the infringement, arguing that "undisputable documentary evidence" established his responsibility for and participation in Designer Optic's systematic trademark infringement practices. (*Id.* at 3). Your Honor granted Plaintiff's request and scheduled a pre-motion conference for October 2021. (Order dated 07/12/2021).

After the conference was scheduled, Plaintiff moved to compel Defendants to answer certain interrogatories and to produce certain documents. (ECF No. 23). This Court granted Plaintiff's motion and, because Defendants' initial nondisclosure was not substantially justified, ordered them to pay for Plaintiff's reasonable expenses incurred in making the motion. (ECF No. 25). Defendants appealed, and discovery was consequently stayed. (ECF Nos. 26–28, 30–31; Order dated 09/20/2021). As a result, Your Honor postponed the conference on Plaintiff's anticipated motion for summary judgment from October 2021 to February 2022. (Order dated 10/8/2021). Your Honor subsequently affirmed this Court's order granting Plaintiff's motion to compel discovery. (ECF No. 32).

---

complaint was filed. (LaVigne-Albert Decl. ¶ 6). Pursuant to the settlement, Defendants were permanently enjoined from using the Solstice name and mark. (LaVigne-Albert Decl. ¶ 6; ECF No. 42-4, Ex. 4 to LaVigne-Albert Decl.). In their opposition motion, Defendants have put forward evidence suggesting that Gaffos and Solstice share an address and common ownership. (Def's Opp. Mem. at 3 n.1).

In November 2021, Plaintiff requested that the Court strike Defendant's answer and impose monetary penalties as sanctions for Defendants' failure to comply with the orders compelling discovery, arguing that Defendant's document productions and interrogatory responses remained deficient and that Plaintiff's expenses in making the motion to compel remained unpaid. (ECF No. 33). Defendants, in turn, moved to compel Plaintiff to produce certain information and documents, arguing that Plaintiff's initial Rule 26(a) disclosures and responses to requests for production were deficient. (ECF No. 34).

In December 2021, this Court granted in part Plaintiff's motion for sanctions by confirming the amount to be paid for Plaintiff's prior motion to compel, by ensuring that Plaintiff would be permitted to depose Designer Optics' CEO to determine the adequacy of Defendants' internal search for responsive information, and by granting Plaintiff's requested discovery extension—allowing fact discovery through February 20, 2022 and setting a final discovery deadline of April 6, 2022. (Order dated 12/07/2021).[2] This Court also granted in part Defendant's motion to compel discovery, and directed Plaintiff to submit supplemental discovery responses, including any additional responsive documents, by January 10, 2022. (ECF No. 37 ("December 10, 2021 Order") at 5).

After another round of unsuccessful settlement discussions, Plaintiff's counsel approached Defendants' counsel on Friday, January 7, 2022—three days before Plaintiff's supplemental discovery deadline—to propose settlement and dismissal via stipulation under Rule 41(a)(1)(a)(ii).

---

[2] This Court declined to strike defendant's answer "as an unwarranted and drastic remedy that should be reserved for only the most egregious discovery violation" and denied plaintiff's request for additional monetary sanctions "as plaintiff ha[d] not cited to any case law or rule which would permit recovery of fees for either (1) a meet and confer on the amount of fees or (2) an unsuccessful Rule 72 appeal of a magistrate judge's discovery ruling." (Order dated 12/07/2021). This Court also found the hourly fees that Plaintiff sought were excessive, and reduced them accordingly. (*Id.*).

(ECF No. 42-1 ("LaVigne-Albert Decl.") ¶¶ 22–24; Pl's Mem. at 4). According to Ms. LaVigne-Albert's sworn declaration, she understood that Defendants would not seek to enforce the Court's discovery order while the terms of a settlement were finalized. (LaVigne-Albert Decl. ¶ 24). On January 10, Plaintiff rejected Defendants' offer to sign the stipulation of dismissal if Gaffos "agreed to a notice and cure provision" and "agreed to either (a) submit any dispute over compensation to binding arbitration in a Beit Din (Rabbinical Court) or [b] pay $50,000 to Defendants." (Pl's Mem. at 4; LaVigne-Albert Decl. ¶ 26).

On January 13, 2022, Gaffos filed its motion for voluntary dismissal. (Pl's Mot.; Pl's Mem.). Defendants opposed Plaintiff's motion and cross moved for attorney fees. (Def's Cross Mot.; Def's Opp. Mem.). On February 3, 2022, Your Honor referred both motions to me, after adjourning without date the previously scheduled pre-motion conference on Plaintiff's anticipated motion for summary judgment. (Orders dated 02/03/2022).

## DISCUSSION

I.  Voluntary Dismissal Under Rule 41(a)

Under Rule 41(a)(2), where the parties do not agree to a stipulation of dismissal, the decision to dismiss an action without prejudice at the plaintiff's request "is within the district court's sound discretion." *Catanzano v. Wing*, 277 F.3d 99, 109 (2d Cir. 2001) (citing *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)). "Although voluntary dismissal without prejudice is not a matter of right, in this Circuit there is a presumption that motions to voluntarily dismiss claims without prejudice should be granted." *RQ Innovations, Inc. v. Carson Optical, Inc.*, No. 19-CV-3886 (RPK) (RER), 2021 WL 1075185, at *2 (E.D.N.Y. Feb. 4, 2021) (citing *Zagano*, 900 F.2d at 14; *Fareportal, Inc. v. Travana, Inc*., No 16 Civ. 9882 (ALC), 2019 WL 4141878, at *2 (S.D.N.Y. Aug. 30, 2019); *Parker v. Tougher Indus., Inc.*, No. 06 Civ. 400, 2013 WL 316389, at *1

(N.D.N.Y. Jan. 28, 2013); *Ascentive, LLC v. Opinion Corp.*, No. 10-CV-4433 (ILG) (SMG), 2012 WL 1569573, at *2 (E.D.N.Y. May 3, 2012); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 216 F.R.D. 29, 36 (E.D.N.Y. 2003)), *adopted by* 2021 WL 1062419 (Mar. 18, 2021).

"Courts consider two lines of authority when deciding a motion to voluntarily dismiss." *Id.* (citing *Camilli v. Grimes,* 436 F.3d 120, 123 (2d Cir. 2006)); *see also Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011). Under the first line of authority, courts consider voluntary dismissal without prejudice "improper if 'the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit.'" *Camilli*, 436 F.3d at 123 (quoting *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947) and citing *Jones v. SEC*, 298 U.S. 1, 19 (1936)). Under the second, courts weigh five "*Zagano* factors" which "include: '(1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss.'" *Kwan*, 634 F.3d at 230 (quoting *Camilli*, 436 F.3d at 123); *see also Zagano*, 900 F.2d at 14. "These factors are not necessarily exhaustive and no one of them, singly or in combination with another is dispositive." *Kwan*, 634 F.3d at 230.

Dismissal without prejudice is warranted here under either test.

A.  Plain Legal Prejudice

"Plain legal prejudice" may preclude voluntary dismissal if "a defendant . . . is ready to pursue a claim against the plaintiff *in the same action* that the plaintiff is seeking to have dismissed," and "'the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action.'" *Camilli*, 436 F.3d at 124 (emphasis in original) (quoting *In re Skinner & Eddy Corp.*, 265

6

U.S. 86, 93–94 (1924)). However, it is well established that "[s]tarting a litigation all over again does not constitute legal prejudice." *D'Alto v. Dahon Cal., Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) (citing *Jones v. SEC*, 298 U.S. 1, 19 (1936)); *see also Empire United Lines Co. v. Presniakovas*, No. 15-CV-557 (DLI) (RER), 2017 WL 4233032, at *3 (E.D.N.Y. Sept. 22, 2017) (finding dismissal under the plain legal prejudice line of authority proper where "[d]efendants make no argument about prejudice aside from citing the possibility that they might be subject to duplicative action at some point in the future").

Plain legal prejudice may be found where defendants allege counterclaims that would be affected by dismissal. *See, e.g.*, *Rhoden v. Mittal*, No. 18-CV-6613 (LDH) (SJB), 2020 WL 8620716, at *3 (E.D.N.Y. Oct. 26, 2020) (finding no plain legal prejudice where defendants "neither asserted nor alluded to counterclaims in their answer") (citing *Staten Island Terminal, LLC v. Elberg*, No. 11-CV-3262, 2012 WL 1887126, at *3 (E.D.N.Y. May 23, 2012)), *adopted by* 2021 WL 857396 (Feb. 23, 2021); *Carbajal v. Miller Bros. Landscape Maint., LLC*, No. 18-CV-7070 (MKB) (SJB), 2020 WL 578822, at *4 (E.D.N.Y. Jan. 3, 2020) (same), *adopted by* 2020 WL 588320 (Feb. 6, 2020). Other potential sources of plain legal prejudice include "'the loss of a federal forum, the loss of jury trial rights, the loss of statute-of-limitations defense, or the inability to conduct sufficient discovery to mount an adequate defense.'" *Gov't Emps. Ins. Co. v. Hazel*, No. 11-CV-00410 (CBA) (VMS), 2014 WL 4628655, at *22 (E.D.N.Y. Aug. 11, 2014) (quoting *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996)), *adopted by* 2014 WL 4628661 (Sept. 15, 2014). Other courts in this Circuit have consolidated the plain legal prejudice analysis with the *Zagano* inquiry, since "'the crucial inquiry in the *Zagano* analysis remains whether the defendant will suffer substantial prejudice as a result of a dismissal without prejudice.'" *Spellman v. Takeda Dev. Ctr. Americas, Inc.*, No. 19-CV-5608 (JMA) (ARL), 2021

WL 1224886, at *4 (E.D.N.Y. Mar. 31, 2021) (quoting *Am. Fed'n of State, Cty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Pfizer, Inc.*, No. 12 Civ. 2237 (JPO), 2013 WL 2391713, at *2 (S.D.N.Y. June 3, 2013)) (alterations omitted).

Here, Defendants largely ignore the first line of authority, and instead focus on the *Zagano* factors, arguing that all five factors weigh in favor of dismissal with prejudice. (Def's Opp. Mem. at 6–11). However, Defendants specifically contend that they "would be prejudiced by 'keeping the threat of litigation hanging over Defendants' heads.'" (Def's Opp. Mem. at 10–11 (quoting *Pac. Elec. Wire & Cable Co. v. Set Top Int'l, Inc.*, No. 03 Civ. 9623 (JFK), 2005 WL 578916, at *6 (S.D.N.Y. Mar. 11, 2005)). Nevertheless, as in *Presniakovas*, Defendants' argument that they might be subject to relitigation in the future is by itself insufficient to demonstrate plain legal prejudice. *Presniakovas*, 2017 WL 4233032, at *3; *see also Camilli*, 436 F.3d at 123 (noting that the test requires "'some plain legal prejudice *other than the mere prospect of a second lawsuit.*'") (emphasis added) (quoting *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947) and citing *Jones v. SEC*, 298 U.S. 1, 19 (1936)).

Since Defendants make no argument about prejudice beyond the possibility of duplicative litigation (*see* Def's Opp. Mem. at 10–11), have filed no counterclaims (*see* Ans.), and have put forth no argument regarding other potential sources of prejudice, and since the Court's assessment of the *Zagano* factors below will ferret out any remaining sources of prejudice to the defendant, the Court finds that the first line of authority weighs in favor of granting Plaintiff's motion to dismiss without prejudice.

### B.  The *Zagano* Factors

As noted above, Defendants argue that all five *Zagano* factors weigh in favor of dismissal with prejudice. (Def's Opp. Mem. at 6–11). I disagree.

1.  Plaintiff's Diligence in Bringing the Motion

Gaffos was diligent in bringing its motion to dismiss.

In assessing the first *Zagano* factor, courts may consider "the length of time an action has been pending and the events that occurred during that period." *RQ Innovations*, 2021 WL 1075185, at *3 (citing *Bosteve Ltd. v. Marauszwki*, 110 F.R.D. 257, 259 (E.D.N.Y. 1986); *Guzman v. Hazemag U.S.A., Inc.*, 145 F.R.D. 308, 310 (E.D.N.Y. 1993)). However, the length of an action's pendency is not dispositive, as courts have granted motions to dismiss without prejudice in cases spanning multiple years, *see, e.g., Catanzano*, 277 F.3d at 110 (finding that "plaintiffs were not dilatory in bringing the motion" to dismiss where litigation was pending for twelve years); *United States v. Cantu*, No. 13 Civ. 8803 (AT), 2021 WL 2167518, at *2 (S.D.N.Y. May 27, 2021) (granting motion to dismiss after seven years of litigation); *Thomas v. New York State Dep't of Corr. Servs.*, No. 00 Civ. 7163 (NRB), 2004 WL 1871060, at *2 (S.D.N.Y. Aug. 20, 2004) (granting motion to dismiss after four years of litigation), and have denied motions to dismiss in cases pending for only one year, *see, e.g., Guzman*, 145 F.R.D. at 310. Accordingly, "[t]he more appropriate measure of diligence is whether a plaintiff moved to dismiss the complaint without prejudice within a reasonable period after an event that led to its decision not to pursue the action." *RQ Innovations*, 2021 WL 1075185, at *3 (citing *Hinfin Realty Corp. v. Pittston Co.*, 206 F.R.D. 350, 355–56 (E.D.N.Y. 2008) ("*Hinfin I*"); *Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.*, No. 05 Civ. 3939 (CM), 2008 WL 4127549, at *6 (S.D.N.Y. Sept. 2, 2008)); *see also Ascentive, LLC,* 2012 WL 1569573, at *4.

Gaffos moved to dismiss on January 13, 2022—less than fourteen months after filing its complaint in November 2020 and three months before the scheduled close of discovery—"when it became apparent that the cost of proceeding exceeded any benefit Gaffos was likely to obtain by doing so." (Pl's Mem. at 4; *see also* Compl.). Defendants pin the "event that led to [Plaintiff's]

decision not to pursue the action" on July 15, 2021, when Designer Optics produced a document putting Plaintiff on notice that its damages would be capped at no more than the $1,500 of total revenue generated by Defendants' use of the keyword "gaffos," in no more than seven sales over one and a half years. (Def's Opp. Mem. at 1–2, 4, 7). As a result, Defendants argue, Plaintiff was dilatory in filing a motion to dismiss six months after it should have been "apparent" that costs would outweigh any benefits of litigation. (*Id.* at 7). Plaintiff responds that its cost-benefit conclusion does not constitute a concession that damages would be capped at $1,500, and was not predicated on the production of a one-page, unsworn, and unverified chart created in contemplation of this litigation in July. (ECF No. 42 ("Pl's Reply") at 11–12). Plaintiff also notes that Defendants' focus on the purported damages cap ignores the upside potential of receiving "a permanent injunction against a serial trademark infringer to stop any further infringements of Plaintiff's trademark." (Pl's Reply at 11).

Although Plaintiff does not pinpoint a particular event that led it to re-evaluate the costs and benefits of continued litigation, the Court is persuaded that Defendants' chart alone is unlikely to have played a significant role in the decision-making process, and that its production is not the event that led to Gaffos' decision to quit this action; rather, the cumulative effect of the parties' contentious motion practice and the inability to consummate a settlement are reasonable impetuses for a plaintiff to undertake a renewed cost-benefit analysis and move for dismissal without prejudice. Indeed, Plaintiff's counsel's sworn statement indicates that the cost-benefit re-evaluation and decision to seek dismissal came soon after a second round of stalled settlement talks, and the motion to dismiss was itself filed just days after the parties failed to agree on the terms of a stipulation of dismissal. (LaVigne-Albert Decl. ¶ 26); *see also Ascentive, LLC,* 2012 WL 1569573, at *4 (finding diligence in bringing motion to dismiss where action was pending for

sixteen months, where Court's unfavorable decision denying preliminary injunction led plaintiff to reassess costs and benefits of moving forward, and where the motion was filed the day after "it became clear that [the parties] would not be able to consummate a settlement"). Because Plaintiff moved to dismiss just fourteen months after initiating the action, before the close of discovery, and very soon after determining that the cost of litigation outweighed its potential benefits, the Court finds that it was diligent in seeking dismissal. Accordingly, the first *Zagano* factor weighs in Plaintiff's favor.

### 2. Plaintiff's Undue Vexatiousness

The second *Zagano* factor also weighs in favor of granting Plaintiff's motion.

"Vexatiousness refers to instances in which a case is brought to harass a defendant or in which a plaintiff had an ill-motive." *Carbajal*, 2020 WL 578822, at *6 (quoting *Luis v. Marabella Pizza, LLC*, No. 18-CV-4052 (FB) (VMS), 2019 WL 4261946, at *3 (E.D.N.Y. Aug. 23, 2019), *adopted by* 2019 WL 4261616 (Sept. 9, 2019)). Ill motive or harassment may be found "where the plaintiff never intended to provide discovery, where the plaintiff brought duplicative suits, or where the plaintiff misrepresented its intention to prosecute the action." *McDaniel v. Revlon, Inc*., No. 20 Civ. 1711 (JGK), 2020 WL 2133183, at *2 (S.D.N.Y. May 5, 2020) (citing *Hinfin I*, 206 F.R.D. at 356; *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. 16-cv-5393, 2018 WL 1115517, at *4 (S.D.N.Y. Feb. 26, 2018)); *see also Lan v. Time Warner, Inc.,* No. 11 Civ. 2870 (AT) (JCF), 2016 WL 554588, at *3 (S.D.N.Y. Feb. 9, 2016) ("Courts find ill-motive where, for example, the plaintiff 'never had any intention of providing discovery in the case but nonetheless permitted the case to proceed, thereby seeking the advantage of filing its charges without having to support them.'") (quoting *S.E.C. v. Oakford Corp.*, 181 F.R.D. 269, 271 (S.D.N.Y. 1998)) (alterations omitted); *Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc.,* No. 03

Civ. 9623 (JFK), 2005 WL 578916, at \*5 (S.D.N.Y. Sept. 2, 2008) (finding vexatiousness where "[p]laintiffs assured the Court, in no uncertain terms, that this case would continue," but "unilaterally and abruptly cancelled" depositions).

Defendants argue that Plaintiff's aggressive pursuit of discovery and sanctions constituted an implicit assurance to the Court and to Defendants that Plaintiff intended to pursue its claims. (Def's Opp. Mem. at 8). Further, Defendants argue that after refusing to compromise on the scope of ESI discovery and forcing Defendants to expend significant resources to collect and produce over one million documents (amounting to more than 100 gigabytes of data), Plaintiff failed to review the produced documents, refused to produce witnesses after being served deposition notices, "thr[e]w in the towel" when ordered to participate in discovery itself, and unilaterally disregarded the Court's December 10, 2021 order compelling participation in that discovery without any effort to comply or to extend the deadline. (Def's Opp. Mem. at 2, 5–6, 8–9).

The Court disagrees that Plaintiff's firm pursuit of discovery and sanctions against its adversary constitutes undue vexatiousness. Unlike in *Pac. Elec. Wire & Cable Co.*, Plaintiff's tactics were not an explicit statement to the Court "in no uncertain terms, that the case would continue." *Pac. Elec. Wire & Cable Co.*, 2005 WL 578916, at \*5. And while Plaintiff's aggressive posture may have signaled its intent to vigorously prosecute claims, "[t]he question [in assessing vexatiousness] is not whether the court approves of the plaintiff's litigation tactics, but whether the plaintiff acted for the purpose of harassing or annoying the defendants." *UMG Recordings, Inc. v. Lindor*, No. 05-CV-1095 (DGT) (RML), 2009 WL 10705760, at \*4 (E.D.N.Y. Oct. 9, 2009) (citing *In re Solv-Ex Corp. Secs. Litig.*, 62 F. App'x 396, 398 (2d Cir. 2003); *Fox Indus., Inc. v. Gurovich*, No. 03 CV 5166, 2009 WL 393949, at \*5 (E.D.N.Y. Feb. 17, 2009)), *adopted by* 2010

WL 11623056 (Feb. 2, 2010). The fact that Plaintiff has doggedly pursued its intellectual property claims is not, standing alone, evidence of undue vexatiousness or ill motive. *See id.*

With respect to its failure to participate in discovery, Plaintiff explains that it "did not provide the supplemental discovery responses because it decided to dismiss this action and was actively engaged in effectuating the dismissal at the time it would have been required to comply with the discovery order." (Pl's Reply. at 13 (citing LaVigne-Albert Decl. ¶¶ 22–26). In *Oakford*, the SEC's conduct was considered vexatious where it filed a motion to dismiss only when "faced with the prospect of actually providing *initial* discovery." *Oakford Corp.*, 181 F.R.D. at 270 (emphasis added). Here, while Gaffos was ordered to supplement its initial disclosures, initial responses to requests for production, and initial responses to interrogatories (ECF No. 36), it should be credited for the initial discovery it has provided (Pl's Reply at 9 n.7), which belies an intent to let the case proceed without participating in discovery at all.

Further, unlike in *Pac. Elec. Wire & Cable Co.,* Plaintiff has not *unilaterally* cancelled depositions or suspended its participation in discovery. *See Pac. Elec. Wire & Cable Co.*, 2005 WL 578916, at *5. Rather, Plaintiff explains that after receiving deposition notices, Defendants did not attempt to schedule the depositions themselves, which were expected to begin after the close of document discovery in late February 2022. (Pl's Reply at 10 n.9). Plaintiff also explained its understanding based on its conversations with defense counsel that Defendants would not object to Plaintiff's failure to meet the supplemental discovery deadline given ongoing settlement negotiations that would obviate the need for further discovery. (LaVigne-Albert Decl. ¶ 24). Although "as a general rule, it is good form for attorneys to contact the Court before disregarding one of its directives," *Pac. Elec. Wire & Cable Co.*, 2005 WL 578916, at *5, "lateness in responding to discovery is not, standing alone, sufficient evidence of bad faith, particularly in light

of the other efforts to prosecute the case." *Rhoden*, 2020 WL 8620716, at \*4. The Court credits Ms. LaVigne-Albert's sworn statement relaying her understanding that the parties were in agreement with respect to the January 10 discovery deadline during settlement negotiations. Further, Plaintiff's proposed motion for summary judgment early in the litigation demonstrates its confidence that its theory of the case was legally and factually meritorious. (*See* ECF No. 21; Pl's Mem. at 2–3); *see also Marabella Pizza*, 2019 WL 4261946, at \*3 (finding a plaintiff who "brought his claims in good faith" but later chose not to pursue litigation did not act with undue vexatiousness) (citing *Fosamax Prods. Liab. Litig*., No. 06 Civ. 5088 (JFK) (JCF), 2008 WL 5159778, at \*3 (S.D.N.Y. Dec. 9, 2008)).

Finally, in questioning Plaintiff's explanation for seeking dismissal, Defendants note that "Plaintiff's counsel filed and settled the *Solstice* action on behalf of a related company just a few months before initiating this action with an almost identical complaint," and express concern that "if Plaintiff is allowed to walk away from this case scot-free, another one of Plaintiff's bogus companies will then come out of the woodwork and file yet another baseless lawsuit against Defendants concerning a different trademark." (Def's Opp. Mem. at 10; *see also id.* at 3 ("Rather than be subjected to continued harassment and extortion, Defendants decided to defend themselves on the merits here.")). Although Defendants implicitly argue that these are duplicative suits constituting harassment, courts typically consider duplicative suits to be vexatious where the same plaintiff filed "more than one action regarding the same alleged injury." *Mondejar v. Dow Chem. Co.*, No. 97-CV-62 (JG), 1998 WL 812577, at \*4 (E.D.N.Y. Apr. 29, 1998). And even then, courts have not found that the duplicative nature of such actions warrants dismissal with prejudice. *See id.* (permitting dismissal without prejudice, conditioned on plaintiff's reimbursement of defendant's expenses); *Ahler v. City of New York,* No. 93 Civ. 0056, 1993 WL 362404, at \*1

(S.D.N.Y. Sept. 13, 1990) (declining to dismiss with prejudice where plaintiff had instituted state court action raising identical claim and stating that "[a]llowing the action to proceed in state court is not . . . sufficient grounds for denying the motion or for dismissing with prejudice"). Although Plaintiffs' counsel represented Solstice in the previous action, and, as Defendants note, there appears to be a connection between Solstice and Gaffos (Def's Opp. Mem. at 3 n.1), the Solstice action and this action concern separate plaintiffs, separate trademarks, and separate injuries.[3] The Court also agrees with Plaintiff that, had Defendants believed this to be "yet another baseless lawsuit," (Def's Opp. Mem. at 10), or a frivolous cause of action, "they would have filed a dispositive motion on that basis." (Pl's Mem. at 4–5).

While the Court recognizes the combative tone and contentious nature of the litigation prior to Plaintiff's motion to dismiss, nothing in the record suggests that Plaintiff filed the action in bad faith, lacked intent to prosecute the case or participate in discovery, or harbored any intent to harass Defendants by bringing suit. Accordingly, the second *Zagano* factor weighs in Plaintiff's favor.

3.  <u>Progress of the Suit and Defendants' Efforts and Expense in Preparing for Trial</u>

"'Courts applying the *Zagano* factors frequently place the greatest emphasis on the efforts expended by the defendant in discovery and trial preparation and the corresponding prejudice the defendant would suffer if forced to relitigate.'" *RQ Innovations*, 2021 WL 1075185 at *5 (quoting *Baldanzi v. WFC Holdings Corp.*, No. 07 Civ. 9551, 2010 WL 125999 (LTS) (GWG), at *4 (S.D.N.Y. Jan. 13, 2010); *see also Spellman*, 2021 WL 1224886, at *3 ("'Many courts consider the extent to which a suit has progressed of primary importance in resolving a Rule 41(a)(2)

---

[3] This Court concluded as much in its December 10, 2021 Order (*See* December 10, 2021 Order at 4–5 (denying Defendants request that Plaintiff produce documents and information concerning other trademarks Plaintiff owns, including SOLSTICE, because "such information is irrelevant to the claims and defenses herein" and because "[t]his case concerns GAFFOS and not SOLSTICE or any other mark.")).

motion.'") (quoting *Stinson v. City Univ. of New York*, No. 18-CV-5963 (RA), 2020 WL 2133368, at *1 (S.D.N.Y. May 4, 2020) (alterations omitted)).

"Factors three and four 'generally weigh against dismissal without prejudice only if the case has progressed to an advanced stage, such as the eve of trial, or when discovery is complete and partial dispositive motions have been adjudicated.'" *Rhoden*, 2020 WL 8620716, at *3 (quoting *Rayburn v. CSX Transp., Inc.*, No. 17-CV-48, 2017 WL 4990631, at *4 (N.D.N.Y. Oct. 31, 2017); *Morehouse v. Clifford*, No. 14-CV-1359, 2016 WL 51254, at *7–8 (N.D.N.Y. Jan. 4, 2016)) (internal quotation marks and alterations omitted); *Am. Fed'n of State, Cty. & Mun. Employees Dist. Council 37 Health & Sec. Plan v. Pfizer, Inc.,* No. 12 Civ. 2237, 2013 WL 2391713, at *4 (S.D.N.Y. June 3, 2013) ("The standard for concluding that a suit has progressed far enough to weigh against dismissal is high, and is usually satisfied only where substantial discovery, summary judgment motion practice, or trial preparation has occurred."); *see also Marabella Pizza*, 2019 WL 4261946 at *2 (finding that the third factor weighed in plaintiff's favor where there was "no indication that any depositions were taken, no dispositive motions were filed, and no trial preparation was commenced"); *Deere & Co. v. MTD Holdings, Inc.*, No. 00 Civ. 5936, 2004 WL 1432554, at *2 (S.D.N.Y. June 23, 2004) (finding prejudice where the case had been pending for nearly four years, sixty-two depositions had been taken, thousands of documents had been produced by both parties, numerous motions had been filed and disposed of, the defendant had incurred six million dollars in legal fees, and discovery had been completed).

In *George v. Prof'l Disbosables Int'l, Inc.*, No. 15 Civ. 3385 (RA) (BCM), 2017 WL 1740395, at *3 (S.D.N.Y. May 2, 2017), the Southern District found that the case "ha[d] progressed to a prejudicial point" where the parties completed costly discovery—including several depositions and "disputes that required the intervention of a magistrate judge"—over a year before the motion

to dismiss was filed, and where the plaintiff "filed his motion on the same day that [defendant] filed its motion for summary judgment." *George*, 2017 WL 1740395, at *3. Similarly, in *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569 (S.D.N.Y. 2004), the Southern District denied a plaintiff's motion to dismiss where defendant "expended considerable time, money ($20,000 in legal fees to date) and effort litigating th[e] action," and where "[d]iscovery ha[d] concluded, and defendant ha[d] brought on a motion for summary judgment, to which plaintiff ha[d] made a patently inadequate response and which [wa]s *sub judice*." *Galasso*, 310 F. Supp. 2d at 572.

There is no question that the Defendants have expended considerable effort in litigating this case, where both parties have fallen short of their discovery obligations such that judicial intervention has been required. (ECF Nos. 23–32, 34–37). However, fact discovery was not yet closed when Plaintiff filed its motion to dismiss, and the parties have taken no depositions. (Order dated 12/07/2021). Further, while the case has come close to the summary judgment stage, unlike in *George* and *Galasso* it is Plaintiff's proposed summary judgment motion, rather than Defendants', that remains unadjudicated and will be left on the table upon dismissal. (ECF No. 21–22). Finally, the parties have not engaged in any trial preparation, and no trial date is set in the case. As was the case in *UMG Recordings*, "[s]ince both sides played a role in amplifying the tensions and prolonging discovery in this case, the third factor does not weigh heavily in either direction." *UMG Recordings*, 2009 WL 10705760, at *5.

4. Duplicative Expense of Relitigation

The fourth factor weighs in favor of granting dismissal without prejudice.

As noted above, the threat of duplicative litigation in itself is insufficient to constitute legal prejudice. *See D'Alto*, 100 F.3d at 283. Further, Courts routinely find that the fourth factor weighs

in a plaintiff's favor, despite the threat of future relitigation, where a defendant can re-use its discovery materials and work product in the potential second suit. *See, e.g.*, *RQ Innovations, Inc.*, 2021 WL 1075185, at *5 ("Defendants will be able to use much of whatever work they have done in this action to defend against any subsequent action in the unlikely event that RQ files another lawsuit against [d]efendants in this or another court based on the same conduct alleged in the [c]omplaint."); *Spellman*, 2021 WL 1224886, at *4 ("Even if [p]laintiff were to refile these claims, [d]efendants would face minimal duplicative expenses of relitigation. . . . [d]efendants have only filed the opening briefs for their motions to dismiss and they can presumably reuse the bulk of those papers even if [p]laintiff were to refile in state court."); *Hazel*, 2014 WL 4628655, at *25 ("Even if GEICO filed another litigation against [defendant], GEICO's position relative to [defendants] is likely to remain the same such that any discovery done to date will translate over into any new case."); *Ascentive, LLC*, 2012 WL 1569573, at *6 ("In the event that [plaintiff] again files suit against [defendant] in another court, it is likely that the grounds will be the same and [defendant] will thus be able to use much of the work that it has completed in this action in defending any subsequent suit.").

Plaintiff explains that "[a]t this time, [it] has no intention to pursue litigation against Defendants in a different court or different forum," but it hopes that the prospect of such future litigation will deter Defendants from repeating the conduct alleged in the complaint. (Pl's Mem. at 4). Defendants point out that they will face "at least some duplicative expense if Plaintiff decides to bring suit again," noting that "while some of the material discovered in this case might be usable, some might not." (Def's Opp. Mem. at 9) (citing *Pac. Elec. Wire & Cable Co.*, 2005 WL 578916, at *6)). Regardless of how much discovery material is ultimately reusable in the event that Plaintiff refiles its case, this Court is inclined to follow the majority of other courts that evaluate the fourth

*Zagano* factor and concludes that Defendants will likely be able to use much of the material and work product they have already prepared should the need arise. To the extent Defendants argue that Plaintiff's claims are frivolous, Defendants can move to dismiss those claims should Plaintiff re-file, which, if successful, would "save [them] altogether from bearing the expense of any additional discovery." *RQ Innovations, Inc.*, 2021 WL 1075185, at *6.

     5.  <u>Adequacy of Plaintiff's Explanation</u>

Finally, the fifth *Zagano* factor weighs in Plaintiff's favor.

"Courts frequently conclude that economic considerations constitute a reasonable explanation for seeking dismissal without prejudice." *RQ Innovations, Inc.* 2021 WL 1075185, at *6 (citing *Hinfin I*, 206 F.R.D. at 357; *Omega Inst., Inc. v. Univ. Sales Sys., Inc.*, No. 08 Civ. 6473, 2010 WL 475287, at *5 (W.D.N.Y. Feb. 5, 2010); *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 261 F.R.D. 29, 33 (S.D.N.Y. 2009)). Plaintiff explains that it "has concluded that the cost of pursuing this litigation to judgment on the merit [sic] is prohibitive, and will exceed any benefit Gaffos could obtain by continuing with the litigation." (Pl's Mem. at 4). The Court accepts Plaintiff's economic explanation as reasonable.

Defendant believes this to be a disingenuous excuse, arguing that Gaffos should have known the costs outweighed the benefits months before bringing this motion, and that "Plaintiff clearly wants to avoid disclosing information in discovery in this action" and "has now been in contempt of the Court's December 10, 2021 Order for weeks." (Def's Opp. Mem. at 9–10). As noted above, the Court disagrees with Defendant's theory that the cost-benefit ratio shifted months before Plaintiff's motion in July 2021. Further, as explained above, the Court finds Plaintiff's justification for failing to meet the discovery deadline credible, and does not see the motion to dismiss as a veiled attempt to withhold information from Defendants. Should Plaintiff refile its claims,

Defendants will be free to seek the same information that they argue is wrongfully withheld here, and can re-use the successful arguments that they used in connection with the Court's December 10, 2021 Order.

Because Defendants will suffer no legal prejudice and the five *Zagano* factors weigh in Plaintiff's favor, I respectfully recommend that the Court grant Plaintiff's motion to dismiss without prejudice under Rule 42(a)(2).

II.   Attorneys' Fees

Defendants argue that an award of attorneys' fees "incurred since the beginning of this action" is warranted as a condition of dismissal of Plaintiff's complaint without prejudice, and seek an award of approximately $65,000. (Def's Opp. Mem. at 15, 17). For the reasons stated below, I disagree.

A.   Fees Under Rule 41(a)(2)

"Where a plaintiff successfully dismisses a suit without prejudice under Rule 41(a)(2), courts often grant the defendant an award of costs or fees." *Hinfin Realty Corp. v. Pittston Co.* ("*Hinfin II*"), 212 F.R.D. 461, 461 (E.D.N.Y. 2002); *see also Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985) ("Fee awards are often made when a plaintiff dismisses a suit without prejudice under Rule 41(a)(2).") (citations omitted).[4] Such awards are generally provided "to reimburse the defendant for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him." *Colombrito*, 764 F.2d at 133 (citations omitted).

---

[4] "When a lawsuit is voluntarily dismissed *with* prejudice under Fed. R. Civ. P. 41(a)(2), attorneys' fees have almost never been awarded." *Colombrito*, 764 F.2d at 134 (emphasis added). Had I recommended dismissal with prejudice, Defendants contend that a fee award would nevertheless be warranted under the fee shifting provision of the Lanham Act, 11 U.S.C. § 1117(a), because a dismissal with prejudice would render them "prevailing parties" in an "exceptional case." (Def's Opp. Mem. 11–14). Because I recommend that the Court dismiss the complaint without prejudice, I will not opine on the merits of Defendant's argument in the alternative.

Although cost or fee awards are permitted under Rule 41(a)(2), such an award is not automatic. *Hinfin Realty Corp. v. Pittston Co.* ("*Hinfin III*"), No. 00-CV-4285 JS, 2014 WL 1653209, at *1 (E.D.N.Y. Apr. 23, 2014) (citing *Glob. One Commc'ns World Holding B.V. v. Gaul*, No. 01–CV–0254, 2008 WL 2783429, at *3 (N.D.N.Y. July 16, 2008)). Instead, some "courts requir[e] a showing of bad faith or vexatious conduct on behalf of the plaintiff before granting fees." *See id.* (recognizing split within the Second Circuit regarding bad faith requirement, collecting cases, and denying fee award); *UMG Recordings*, 2009 WL 10705760, at *5 (same); *Ascentive, LLC*, 2012 WL 1569573, at *7 (finding an award of attorneys' fees unwarranted because defendant "failed to establish any bad faith or vexatiousness on the part of" the plaintiff); *Spellman*, 2021 WL 1224886, at *5 (declining to condition request for a dismissal without prejudice on the payment of Defendants' attorneys' fees and costs, without mentioning bad faith requirement); *Hazel*, 2014 WL 4628655, at *26 (same). *But see Ivoclar Vivadent Inc. v. Corp. Cortex Machina*, No. 01-CV-0113A, 2004 WL 2315071, at *7 (W.D.N.Y. Oct. 14, 2004) (finding fee award appropriate "to reimburse defendants for their wasted efforts" without a finding of bad faith); *Mercer Tool Corp. v. Friedr. Dick GmbH*, 179 F.R.D. 391, 396 (E.D.N.Y. 1998) (awarding fees without a finding of bad faith or vexatious conduct); *Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11, 18 (E.D.N.Y. 1996) (conditioning dismissal without prejudice on plaintiff's payment of defendant's reasonable costs and attorneys' fees without a finding of bad faith).

Courts that choose to award fees upon dismissal without prejudice typically limit such awards "'to compensation for work that cannot be used in a second contemplated action, and the amount of fees awarded must be supported by evidence in the record." *Hinfin II*, 212 F.R.D. at 463 (quoting *Ames v. Clifford*, No. 94 Civ. 6712, 1996 WL 563098, at *1 (S.D.N.Y. Oct. 2, 1996); *see also Horton*, 169 F.R.D. at 18 (E.D.N.Y. 1996) (noting that courts generally will not reimburse

defendants for the costs and expenses incurred for work that will be relevant in other pending litigation between the parties, or that were incurred unnecessarily).

As noted above, Defendants have not demonstrated that Plaintiff acted in bad faith or engaged in vexatious conduct. Further, as noted above, if Plaintiff refiles, Defendants will likely be able to re-use the material discovered and the work product created in anticipation of this litigation. Accordingly, the Court concludes that an award of attorneys' fees under Rule 41(a)(2) is unwarranted.

B.  Fees as a Sanction for Contempt

An award of attorneys' fees under the Court's authority to impose sanctions on parties held in civil contempt is similarly inappropriate here.

Civil contempt is a "potent weapon." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801–02 (2019) (quoting *Longshoremen v. Philadelphia Marine Trade Assn.*, 389 U.S. 64, 76 (1967) (internal quotation marks omitted)). It should not be wielded "'where there is a fair ground of doubt as to the wrongfulness of the [party's] conduct.'" *Id.* (quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)) (emphasis and alterations omitted); *see also S. New England Tel. Co. v. Glob. NAPs Inc.,* 624 F.3d 123, 144–45 (2d Cir. 2010) (same).

"A court may . . . hold a party in contempt for violation of a court order when 'the order violated by the contemnor is clear and unambiguous, the proof of non-compliance is clear and convincing, and the contemnor was not reasonably diligent in attempting to comply.'" *S. New England Tel. Co.*, 624 F.3d at 146 (quoting *EEOC v. Local 638,* 81 F.3d 1162, 1171 (2d Cir.1996)). Sanctions imposed pursuant to a contempt order "may serve 'dual purposes': securing 'future compliance with court orders' and 'compensating the party that has been wronged.'" *Id.* (quoting *Paramedics Electromedicina Comercial, Limitada v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d

645, 657 (2d Cir.2004)). However, civil contempt sanctions "may not be imposed as a purely punitive measure." *Paramedics Electromedicina*, 369 F.3d at 657 (citing *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,* 885 F.2d 1, 5 (2d Cir.1989)).

Defendants contend that Plaintiff's disobedience of the Court's December 10, 2021 Order is sanctionable under the Court's inherent power to hold parties and counsel in contempt, and seek sanctions in the form of attorneys' fees. (Def's Opp. Mem. at 14–15; *see also* December 10, 2021 Order).[5] Specifically, Defendants contend that by filing a motion to dismiss in lieu of compliance with the order, "Plaintiff has unjustly benefitted by continuing to withhold documents and information that would reveal the substantive weakness of its claims (e.g., that it has no evidence supporting a likelihood of confusion) and that it had no evidence of 'substantial damages.'" (Def's Opp. Mem. at 15). They therefore urge the Court to impose sanctions to rectify this purported injustice and to "secure future compliance with court orders." (*Id.*).

There is no question that Plaintiff failed to obey the Court's clear and unambiguous order to provide Defendants with supplemental discovery responses. Indeed, Plaintiff admits its disobedience. (Pl's Reply at 13; LaVigne-Albert Decl. ¶ 24). Nevertheless, civil contempt sanctions would serve no coercive or compensatory purpose here, and would purely serve as an impermissible punitive measure. Sanctions would serve no coercive purpose because the need for compliance is obviated by the dismissal of Plaintiff's complaint. *See, e.g., Aurelius Cap. Partners,*

---

[5] Defendants specifically seek attorneys' fees under the Court's inherent contempt power. They do not seek sanctions under Rule 37, which permits the imposition of "just" sanctions for failure to comply with a court's discovery order, which may include treating the failure to obey as contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(vii). The Rule also "requires that the court order the disobedient party, its attorney, or both, to pay 'the reasonable expenses, including attorney's fees' caused by the failure to comply, unless the court finds the failure 'substantially justified' or that 'other circumstances make an award of expenses unjust.'" *Martinez v. City of New York*, 330 F.R.D. 60, 65 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 37(b)(2)(C). Because Defendants do not seek attorneys' fees under Rule 37 and have not identified any reasonable expenses caused by Plaintiff's failure to comply, and because Defendants' assurances to Plaintiff that they would not seek enforcement of the Court's order (*see* LaVigne-Albert Decl. ¶ 24) would render an award of any such expenses unjust, the Court does not recommend a fee award under Rule 37. Instead, as directed by Defendants, I will focus only on the propriety of sanctions under the Court's inherent contempt power.

*LP v. Republic of Argentina*, 379 F. App'x 74, 76 (2d Cir. 2010) (vacating as moot district court's contempt order where underlying orders of restraint and attachment were previously vacated, leaving the sanctions imposed "without practical effect," and noting that "there is no purpose to be served by coercing discovery about assets that are admittedly no longer subject to attachment"). Further, civil contempt sanctions would serve no compensatory purpose here, where Defendants have not demonstrated any additional costs or losses that they have suffered as a result of Plaintiff's noncompliance beyond a lack of information that they will no longer need. *See N.Y. State NOW v. Terry,* 886 F.2d 1339, 1353 (2d Cir.1989) ("A sanction may, of course, be both coercive and compensatory. Yet, some proof of loss must be present to justify its compensatory aspects."). Indeed, Defendants have already been compensated for the reasonable expenses incurred in seeking the motion to compel that brought about the December 10, 2021 Order under Rule 37(a)(5). (*See* December 10, 2021 Order at 5). As a result, a civil contempt order and sanctions would only serve to punish Plaintiff for its non-compliance. *See Paramedics Electromedicina*, 369 F.3d at 657. Such a punishment is impermissible, and would be particularly inappropriate here, where Plaintiff raises a "fair ground of doubt as to the wrongfulness" of its conduct by noting that Defendants' counsel was aware of the likelihood of non-compliance and assured Plaintiff that it would not seek enforcement of the discovery order. (*See* LaVigne-Albert Decl. ¶ 24). Accordingly, a finding of civil contempt and consequent sanctions awarding attorneys' fees to Defendants is unwarranted.

Because a fee award under Rule 41(a)(2) is unwarranted, and because civil contempt sanctions would serve no coercive or compensatory purpose, I respectfully recommend that Defendants' cross-motion for attorneys' fees be denied.

## **<u>CONCLUSION</u>**

For the reasons set forth above, I respectfully recommend that Plaintiff's motion for voluntary dismissal without prejudice be granted, and that Defendants' cross-motion for attorneys' fees be denied.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Eric R. Komitee within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED

/s/ Ramon E. Reyes, Jr.
_____
RAMON E. REYES, JR.
United States Magistrate Judge